■ In the Matter of THOMAS R. SNOW, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Respondent is an attorney admitted to practice in this department in 1967. He presently maintains an office for the practice of law in the Town of Catskill, Greene County.

In the instant proceeding to discipline respondent for professional misconduct, petitioner moves for an order confirming the report of the Referee to whom this matter was referred. In that report, the Referee sustained all six charges (one in part only) of professional misconduct against respondent.

The first two charges contained in the petition arise out of respondent's representation of client Marie Bleadow in a November 1985 closing of title for property located in Rensselaer County. Charge I of the petition alleges that respondent violated Code of Professional Responsibility DR 6-101 (A) (3), by neglecting to timely pay overdue taxes on the property despite Bleadow's repeated requests. As a result, Bleadow had to pay the taxes herself and then seek reimbursement from respondent, who paid her out of the excess closing funds he held in escrow. In addition, this charge alleges that respondent failed to timely forward required papers to the mortgagee, Farmer's Home Administration (FmHA), despite FmHA's repeated requests. Respondent testified that he never told Bleadow he would pay the back taxes; he claims that it was understood all along that Bleadow was to pay the taxes herself and then seek reimbursement from him. Accordingly, respondent argues that his delay in forwarding the required closing papers to FmHA was actually brought about by Bleadow's failure to provide him with paid tax receipts so that the excess escrow moneys could be distributed and the closing satisfactorily completed. Clearly, respondent's explanation is belied by the extensive evidence at the hearing showing Bleadow's repeated unsuccessful attempts to contact him via the telephone and by certified mail. The testimony of Bleadow and of a FmHA representative are entirely credible. Even if respondent's version of these events is to be believed, it does

not explain why he made no attempt, over the span of several months, to contact Bleadow or FmHA in order to clear up any misunderstanding concerning the unpaid tax bill. We therefore find that this charge is supported by the evidence.

Charge II alleges that respondent violated DR 9-102 (B) (3) and 22 NYCRR 806.18 by failing to account for or provide records of funds held in escrow and paid on Bleadow's behalf. The Referee refused to sustain the first specification of this charge and petitioner does not dispute this conclusion. Since our examination of the record does not compel a different result, we agree that the first specification of this charge should not be sustained. Nonetheless, the second specification of charge II alleges that respondent's reimbursement of Bleadow for the back taxes and his repayment of the remaining amount he held in escrow to FmHA were both paid through the use of personal money orders even though the funds were supposed to be held in escrow from the November 1985 closing. Thus, the petition alleges that respondent failed to properly account for the proceeds used to purchase the money orders and to maintain and provide a record of the withdrawal or disbursement of the escrow funds entrusted to him.

The record shows that respondent basically admits to his "technical" guilt on this charge. However, he points to the extenuating circumstances surrounding the transaction in question. He testified that, at some point prior to his purchase of the money orders, the Internal Revenue Service filed a levy against his escrow and operating accounts. With no apparent alternative presenting itself, respondent further testified that he then replaced the levied funds with $700 in cash taken from business funds which he kept in a drawer separate from his other moneys. He stated that he took cash from this fund to purchase the two personal money orders for Bleadow and FmHA and, thus, he only did what he thought was responsible and prudent to protect his client under the circumstances. Despite respondent's explanation, it is significant that he produced no evidence concerning the exact time the levy occurred on his accounts and had no records covering the period of time Bleadow's funds were in his escrow account. Nor did he produce records for the cash he allegedly kept in his desk out of which these obligations were paid. Accordingly, we conclude that respondent's violation of the rules governing escrow accounts was sufficiently established.

The third and fourth charges arise out of respondent's representation of client William Bennett in an action for the wrongful death of Bennett's mother, who suffered a fatal

heart attack allegedly caused by a physician improperly prescribing an amphetamine. Charge II accuses respondent of neglect in violation of DR 6-101 (A) (3) in that he failed to serve a bill of particulars which resulted in the Bennett action being dismissed on its merits on the ground plaintiff was precluded from proving a prima facie case by the terms of a prior preclusion order. Following this dismissal, an appeal to this court by new counsel was unsuccessful *(see, Bennett v Sullivan,* 116 AD2d 938).

Clearly, the evidence at the hearing demonstrates that, for whatever reason, respondent never served the bill of particulars which resulted in the dismissal of the Bennett action. While respondent argues that he did not serve the bill of particulars because he did not have the necessary information or evidence to frame a response, this does not explain why he failed to take other steps which would have been appropriate under the circumstances, such as opposing the original motion to preclude or cross-moving for a protective order or for defendant's deposition. Accordingly, the finding of guilt on this charge is fully supported by the record.

Charge IV accuses respondent of violating DR 6-102 by attempting to exonerate himself or limit his liability to Bennett for his personal malpractice. It is alleged that respondent impermissibly executed a settlement agreement wherein he agreed to pay Bennett the sum of $2,000 in lieu of any and all claims Bennett might have against him, without first informing Bennett of any possible claim for malpractice or suggesting that Bennett consult with another attorney prior to signing *(see, Matter of Tallon,* 86 AD2d 897, 898).

The evidence at the hearing established that respondent and Bennett agreed to a substitution of attorneys on March 12, 1985 which was prior to execution of the settlement agreement on April 29, 1985. The hearing testimony also shows that Bennett's version of the facts was somewhat inconsistent and confusing as to the amount of money he gave respondent and whether the amounts paid were for legal fees or for the development of a medical evidence fund. Nonetheless, Bennett specifically testified that, at about the time respondent informed him of the dismissal of his case, respondent told him that he had a possible claim for malpractice. Bennett also testified that he immediately discussed a malpractice action against respondent with his new attorney, who he retained in March 1985 and who confirmed his suspicion that respondent "hadn't done his job". Based on this evidence, we find that Bennett was aware of his rights with respect to a

malpractice claim against respondent at the time he signed the settlement agreement. Accordingly, there is insufficient proof to establish respondent's guilt of this charge.

Charge V alleges that respondent neglected a matter entrusted to him by Josephine Slovak in violation of DR 6-101 (A) (3). The charge contains three specifications which stem from Slovak's retention of respondent in 1973 to commence an action setting aside a deed Slovak had earlier executed conveying property to one of her sons and his wife. An action was commenced in 1974, an answer was served in 1976 and Slovak subsequently died in 1979. Following Slovak's death, her daughter and executrix, Marian A. Mariani, complained to petitioner concerning respondent's handling of her mother's case. This complaint resulted in respondent's admonishment by petitioner in September 1982 for neglect of the Slovak lawsuit and failure to cooperate with petitioner in its investigation of the matter. Thereafter, an order substituting Mariani as plaintiff in the Slovak lawsuit was signed in October 1982. Notably, by agreement of the parties in the instant proceeding, the allegations contained in charge V were amended so that they basically concern the progress of the Slovak lawsuit following this substitution. Mariani had also retained respondent to probate Slovak's estate.

The first specification of charge V alleges that, following respondent's filing of a note of issue in the Slovak action in 1985, the defendants made a motion for summary judgment dismissing the complaint. This motion was not opposed by respondent and the action was subsequently dismissed. Respondent has admitted his guilt as to this specification and thus it was properly sustained. The second and third specifications concern respondent's failure to respond to Mariani's many telephone calls, his failure to advise Mariani of the dismissal of her mother's lawsuit and respondent's failure to take steps sufficient to settle the Slovak estate. Our review of the record reveals that all of these allegations are supported by the evidence. Respondent's contention that Mariani did not want her mother's estate settled is belied by the record. Mariani's many unsuccessful attempts to contact respondent and speed his progress demonstrate that she desired to settle the estate, but admittedly not until the property that was the subject of the Slovak lawsuit was successfully returned to the estate so that it could be divided equally. Thus, respondent's delinquency in prosecuting the Slovak action and his conduct following that action's dismissal clearly show that he failed to

take sufficient steps to settle the estate and charge V is therefore sustained in its entirety.

Finally, charge VI alleges that respondent again violated DR 6-101 (A) (3) by neglecting a matrimonial action entrusted to him by client Robert Severson. The three specifications in that charge accuse respondent of failing to forward a separation agreement to Severson, failing to respond to several telephone calls or reply to correspondence sent to him by Severson and failing to respond to correspondence written to him by Severson's wife's attorney. Since the testimony and record evidence fully support these allegations, we find this charge should also be sustained in its entirety.

In determining the sanction to be imposed for respondent's misconduct, we note that he is no stranger to the disciplinary process. In 1977, respondent was admonished for representing both the husband and wife in the preparation of a separation agreement knowing such representation to be improper, and for failing to cooperate with petitioner in its investigation of the matter. In 1978, respondent was again admonished for handling a legal matter without adequate preparation under the circumstances and for misleading and deceiving his client as to the status of an appeal. In 1982, respondent was admonished for a third time for neglect of a claim on behalf of Josephine Slovak and for once again failing to cooperate with petitioner. We find this last admonishment notable in that by it respondent was clearly warned as to his conduct in the Slovak lawsuit yet continued to neglect it resulting in its dismissal as discussed in charge V, *supra.*

While respondent's misconduct cannot be considered heinous, his seemingly habitual carelessness and neglect have resulted in serious consequences for his clients and have generally brought the legal profession into disfavor and disrepute. His attempts at mitigation are not particularly credible or compelling. Further, respondent's attempt to blame his failure to respond to telephone calls or correspondence on his secretary's illness is not persuasive since it was his responsibility to ensure that the legal matters entrusted to his care was satisfactorily handled.

In view of the foregoing, and especially considering respondent's past disciplinary history, we conclude that respondent should be suspended from practice for one year.

Motion by petitioner to confirm Referee's report granted as to charges I, II, III, V and VI and denied as to charge IV; respondent ordered suspended for a period of one year and

until further order of this court, the effective date to be fixed in the order to be entered hereon. Mahoney, P. J., Kane, Weiss, Yesawich, Jr., and Levine, JJ., concur.